UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARDO MAGALLON,<br><br>Plaintiff,<br><br>v.<br><br>BUREAU OF PRISONS, et al.,<br><br>Defendants. | Case No. CV 21-1540-VAP (MAR)<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

## I.

## INTRODUCTION

On February 19, 2021, Plaintiff Leonardo Magallon ("Plaintiff"), a federal prisoner proceeding pro se and in forma pauperis ("IFP"), filed a Civil Rights Complaint ("Complaint") pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics ("Bivens"), 403 U.S. 388 (1971). ECF Docket No. ("Dkt.") 1. On March 12, 2021, the Court issued an Order Dismissing the Complaint with Leave to Amend. Dkt. 8. On April 9, 2021, Plaintiff filed his First Amended Complaint ("FAC"). Dkt. 10.

**For the reasons discussed below, the Court dismisses the First Amended Complaint with leave to amend. If Plaintiff desires to pursue this action, he is ORDERED to file a Second Amended Complaint ("SAC") within twenty-one (21) days of the service date of this Order. In his SAC, Plaintiff must address the discrepancies identified in this Order.**

Further, Plaintiff is admonished that, if he fails to timely file a Second Amended Complaint or fails to remedy the deficiencies of this pleading, the Court will recommend that this action be dismissed without further leave to amend and with prejudice for failure to state a claim and follow the Court's orders.[1]

## II.

## SUMMARY OF THE FIRST AMENDED COMPLAINT

### A.   FACTUAL ALLEGATIONS

On April 9, 2021, Plaintiff filed his First Amended Complaint.  Dkt. 10. Plaintiff asserts Eighth Amendment claims for damages against the following defendants at the Federal Correctional Institution, Terminal Island ("FCI Terminal Island"):  (1) Special Housing Unit ("SHU") Correctional Officer ("C.O.") Rodriguez; (2) Lieutenant ("Lt.") Calwile; (3) SHU C.O. Serna; (4) Captain Monarez; (5) Lt. Buckle; (6) medical staff member Bakalian; (7) SHU C.O. Lara; (8) SHU C.O. Solis; and (9) SHU C.O. Del Rio (collectively "Defendants").  Id. at 3-6.

In his FAC, Plaintiff makes the following allegations:[2]

On or about April 10, 2018, Plaintiff was told by a U.S. Marshal at the United States Court House in the Southern District of Iowa that he had "the right to submit to DNA swabs."  Id. at 7.

On or about June 4, 2019, Plaintiff was transferred to FCI Terminal Island, where an unknown U.S. Marshal requested that he supply a DNA sample.  Id.

---

[1] Plaintiff is advised that this Court's determination herein that the allegations in the First Amended Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, although this Court believes that you have failed to plead sufficient factual matter in your pleading, accepted as true, to state a claim to relief that is plausible on its face, you are not required to omit any claim or defendant in order to pursue this action.  However, if you decide to pursue a claim in a Second Amended Complaint that this Court has found to be insufficient, then this Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately may submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to your right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

[2] Where it is unclear, the Court sets out what it believes Plaintiff to be alleging.

2

1  Plaintiff refused "to provide a sample of [his] DNA" because "unknown U.S. Marshal
2  at [sic] U.S. Court House at the Southern District Ct of Iowa stated [Plaintiff] could
3  refuse." Id.  After refusing, Plaintiff was placed in a cell by himself at receiving and
4  discharging. Id.  At this point, Defendant Lt. Buckle approached Plaintiff's cell and
5  proceeded to handcuff him and escort him with his hands behind his back to the
6  SHU. Id. at 7, 9.

7  On or about June 5, 2019, at around 11:00 a.m., Defendant Lt. Calwile
8  approached Plaintiff's cell and "asked why [Plaintiff] refused to give a sample of
9  [Plainiff's] DNA," to which Plaintiff replied with the same reason he had given the
10 unknown U.S. Marshal the day before. Id. at 9.  According to Plaintiff, Lt. Calwile
11 responded that "the easy way you become a man and give us a sample of your DNA,"
12 or "the hard way, we beat it out of you!" Id.  (internal quotation marks omitted).  At
13 around 11:08 a.m., Lt. Calwile handcuffed Plaintiff and escorted him from his cell in
14 the SHU to a cage in the SHU office where he stood for about forty (40) minutes. Id.

15 At around 11:50 a.m., Defendant C.O. Rodriguez asked Plaintiff to turn and
16 place his hands through cell door so that he could be handcuffed again. Id.  Plaintiff
17 responded "no, you guys will not beat me up!" to which C.O. Rodriguez replied,
18 "we're not going to beat you up, we're taking you to R&D [receiving and
19 discharging]." Id.  According to Plaintiff, C.O. Rodriguez "forcefully (with his right
20 hand) holding [Plaintiff's] left bicep, [and] Defendant [C.O.] Solis forcefully (with his
21 left hand) holding [Plaintiff's] right bicep, escorted [Plaintiff] down a hallway, away
22 from the SHU office." Id.  Plaintiff was escorted into a conference room at the end
23 of the hallway, where C.O. Rodriguez and C.O. Solis, still holding his biceps, had him
24 face the wall/glass separating the conference room he was in from another
25 conference room. Id.

26 Once Plaintiff was in the conference room, he heard different male voices,
27 "perhaps the rest of the [D]efendants Serna, Lara, Bakalian, Del Rio, Buckle, Calwile,
28 [and] Monarez." Id. at 10.  At this point, Plaintiff felt a hand on the right side of his

chest "slowly working its way up, (to my neck, I thought)" so he slowly shrugged his shoulders and lowered his chin to his chest because he "thought perhaps [he] was going to be choked out, but no." Id. He then felt a second hand come toward his face holding what appeared to Plaintiff to be the DNA sampler. Id. "At no time did any prison official bring to [Plaintiff's] attention why [Plaintiff] could not refuse [the DNA sample]." Id. at 12.

Plaintiff tried avoiding the DNA sampler, which he alleges was being applied with "aggressive force – aggressive pressure" while his left knee was slammed against the bottom half of the wall/glass so that he could not go forward or backward. Id. at 10. He proceeded to "climb the wall/glass with just [his] feet" because only his hands were restrained. Id. Plaintiff was then picked up into the air before being placed on the concrete floor where his head and right heel slammed on the concrete. Id. The FAC notes that Plaintiff does not know who picked him up because he was "facing the ceiling" when it happened. Id.

Once Plaintiff was put on the ground, Defendant Bakalian took the DNA sampler and attempted to shove it into Plaintiff's mouth while Defendant C.O. Solis[3] attempted to forcefully open Plaintiff's mouth with his bare hands[4] and Defendant C.O. Del Rio held onto Plaintiff's legs and bent his feet forward to touch the ground. Id. at 10-11. One of the other defendants[5] then placed Plaintiff in leg restraints. Id. at 11. At the same time, Plaintiff started to taste blood in his mouth because his

---

[3] Plaintiff notes in the FAC that he is not certain it was Defendant Solis, only that he believed to the best of his knowledge that it was. See id.

[4] Plaintiff alleges that C.O. Solis did so: "with his four fingers on [Plaintiff's] left cheek, his thumb on [Plaintiff's] right cheek, his palm under/in front of [Plaintiff's] chin, with [Plaintiff's] head on the concrete moving [Plaintiff's] head/face front, back, side to side." Id. at 10-11.

[5] The FAC states:
> I'm not sure of how it happens, if it was [D]efendant Del Rio who place[d] [Plaintiff] on leg restraints, (while my foot is bent), or if it was one of the other [D]efendant(s) Lara, Rodriguez, Serna, Calwile, Buckle, and/or Monarez. There were too many individuals and too much going on for [Plaintiff] to keep track of it all.

Id.

4

1  bottom lip was busted "due to [D]efendant Bakalian trying to force the DNA sampler
2  in [Plaintiff's] mouth." Id.  In addition, "the inside of [Plaintiff's] cheeks were
3  bleeding "due to [D]efendant Solis rubbing/moving [Plaintiff's] face/head front,
4  back, side to side." Id.  Plaintiff felt his head pounding, out of breath, and anxiety
5  while laying face up on the concrete with his hands cuffed behind his back and one of
6  Defendant(s) Rodriguez, Serna, and/or Lara body weight on him.[6] Id.

7      Plaintiff was then placed in solitary confinement, where he alleges that he was
8  denied medical attention and an unknown staff member took video and/or picture
9  footage of his injuries. Id.  Plaintiff was placed in the SHU for three weeks allegedly
10 because of the bruises and swelling and/or injuries caused by Defendant(s). Id.
11 Plaintiff claims to have filed and received no replies to the following documents: (1)
12 an administrative remedy; (2) a letter to the Inspector General; (3) a letter to the
13 ACLU; and (4) a tort claim on November 20, 2019. Id. at 11-12.

14     Plaintiff alleges that since the incident on June 5, 2019, Defendants "continue
15 to harass [Plaintiff], humiliate [Plaintiff], put [Plaintiff] down by calling [him] 'DNA'
16 and remind [Plaintiff] of [Defendants'] unlawful actions." Id. at 12.  This includes
17 Defendants threatening and reminding Plaintiff of "their unlawful actions if [Plaintiff]
18 don't do as they please" thereby creating a "hostile environment" for Plaintiff. Id.

19 **B.  RELIEF SOUGHT**

20     Plaintiff alleges that he "has suffered and will continue to suffer emotional
21 distress over deprivation of constitutionally protected rights." Id. at 13

22     Plaintiff requests damages to compensate for: "(a) past, present and future
23 mental pain, anguish and suffering" and "(b) past, present and future physical pain,
24 suffering and loss of function, including but not limited to rehabilitation cost,
25 doctor/counseling bills, hospital bills, medical test, pharmaceutical bills, laboratory
26 examination, physical examination cost and diagnostic studies." Id.  Therefore,

---

28 [6] Plaintiff states that he "would be [lying] if [he] specified either one of the [D]efendant(s) Serna, Lara, and/or Rodriguez." Id.

1  Plaintiff requests: "judgment against the Defendants and prays that the Court enters
2  an order requiring the Defendants to account to the Plaintiff and following the
3  accounting, the Court enters a judgment in favor of the Plaintiff and against the
4  Defendants for the amount of 5 million dollars." Id.

## III.
## STANDARD OF REVIEW

Where a plaintiff proceeds in forma pauperis, a court must screen the complaint under 28 U.S.C. § 1915 and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint fails to state a claim for screening purposes, a court applies the same pleading standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v.

1   Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662,
2   678 (2009)).  A claim is facially plausible when it "allows the court to draw the
3   reasonable inference that the defendant is liable for the misconduct alleged." Id.  The
4   complaint "must contain sufficient allegations of underlying facts to give fair notice
5   and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d
6   1202, 1216 (9th Cir. 2011).

7   "A document filed pro se is 'to be liberally construed,' and a 'pro se complaint,
8   however inartfully pleaded, must be held to less stringent standards than formal
9   pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008).
10  However, liberal construction should only be afforded to "a plaintiff's factual
11  allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989), and a court need not
12  accept as true "unreasonable inferences or assume the truth of legal conclusions cast
13  in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir.
14  2003).

15  If a court finds the complaint should be dismissed for failure to state a claim, a
16  court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203
17  F.3d 1122, 1126-30 (9th Cir. 2000).  Leave to amend should be granted if it appears
18  possible the defects in the complaint could be corrected, especially if the plaintiff is
19  pro se.  Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir.
20  1995).  However, if, after careful consideration, it is clear a complaint cannot be cured
21  by amendment, a court may dismiss without leave to amend. Cato, 70 F.3d at 1107–
22  11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

23                                              **IV.**
24                                        **DISCUSSION**
25  **A.   THE FAC VIOLATES RULE 8**
26       **1.    Applicable Law**
27  Rule 8 of the Federal Rules of Civil Procedure requires a complaint contain "a
28  short and plain statement of the claim showing that the pleader is entitled to relief"

7

and "a demand for the relief sought." Fed. R. Civ. P. 8. Rule 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007). "[T]he 'short and plain statement' [required by Rule 8] must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Bautista v. L.A. Cty., 216 F.3d 837, 841 (9th Cir. 2000).

A court may dismiss a complaint because it is unintelligible or frivolous "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Further, Rule 8 requires that a complaint clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131–32 (9th Cir. 2008); Conley v. Gibson, 355 U.S. 41, 47 (1957). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

To comply with Rule 8, a plaintiff must link each defendant to specific instances of unlawful conduct. See Estate of Bock ex rel. Bock v. Cty. of Sutter, No. 2:11–CV–00536–MCE, 2012 WL 423704, at *6 (E.D. Cal. Feb. 8, 2012). Where a plaintiff sues multiple defendants, "[s]pecific identification of the parties to the activities alleged by [a plaintiff] is required . . . to enable the defendant to plead intelligently." Sherrell v. Bank of Am., N.A., No. CV F 11-1785 LJO JLT, 2011 WL 6749765, at *4 (E.D. Cal. Dec. 22, 2011) (internal quotations omitted). If the Complaint does not specify which conduct is attributable to which defendant, it is

1  subject to dismissal. See id. (dismissing complaint where it "lack[ed] cognizable facts
2  of defendants' purported wrongdoing to provide fair notice as to what each defendant
3  is to defend.").

4  **2. Analysis**

5  Here, the conclusory allegations in the FAC prevent the Court, and Defendants
6  C.O. Rodriguez, Lt. Calwile, C.O. Serna, Captain Monarez, Lt. Buckle, C.O. Lara,
7  C.O. Solis, and C.O. Del Rio, from deciphering the factual and legal basis for any of
8  their alleged liability. See Clayburn v. Schirmer, 2008 WL 564958, at *4 (E.D. Cal.
9  Feb. 28, 2008) ("The court (and any defendant) should be able to read and understand
10 Plaintiff's pleading within minutes." (citing McHenry v. Renne, 84 F.3d 1172, 1177
11 (9th Cir. 1996))). The FAC provides the Court with a detailed factual account of the
12 Plaintiff's physical experiences during the incident where the alleged excessive force
13 occurred on June 5, 2019. See Dkt. 10 at 7–12. However, Plaintiff fails to link any of
14 these defendants to his allegations of specific unlawful actions that violated Plaintiff's
15 constitutional rights. See id. In part, this is because the FAC lumps all of these
16 defendants and their alleged conduct within a single claim. Plaintiff goes into detail
17 about the alleged excessive force he suffered, but aside from Defendant Bakalian,
18 Plaintiff acknowledges multiple times throughout the FAC his inability to specifically
19 know and/or identify which defendant(s) took which action(s) against Plaintiff. See
20 id. at 10–12.

21 Absent specific allegations identifying what actions each of these defendants
22 took against Plaintiff and how such actions violated Plaintiff's rights, the FAC fails to
23 provide any defendant with fair notice of Plaintiff's claims or the grounds upon which
24 they rest. Accordingly, Plaintiff's FAC does not set forth a "short and plain
25 statement" of his claims as required by Rule 8. Dura Pharms., Inc., 544 U.S. at 346.

26 As such, the FAC is subject to dismissal with leave to amend for failure to
27 comply with Rule 8. See McHenry, 84 F.3d at 1177. If Plaintiff chooses to file a
28 second amended complaint, he must identify the legal and factual basis for each

defendants' alleged liability. Plaintiff should be aware that in order to state a claim for a civil rights violation under section 1983,[7] he must allege that a particular defendant, acting under color of state law, deprived Plaintiff of a right guaranteed under the U.S. Constitution or a federal statute. 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988). Suits against government officials under section 1983 in their individual capacities "seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In any amended complaint, Plaintiff should clearly state:

(1)  the constitutional right that [Plaintiff] believes was violated;
(2)  the name of the [Defendant(s)] who violated the right;
(3)  exactly what the [Defendant(s)] did or failed to do;
(4)  how the action or inaction of the [Defendant(s)] is connected to the violation of [Plaintiff's] constitutional right; and
(5)  what specific injury [Plaintiff] suffered because of the [Defendant(s)'] conduct.

---

[7] Since Bivens actions and actions under 42 U.S.C. § 1983 are significantly similar, cases decided under section 1983 are generally applied by analogy when addressing an issue in a Bivens action for which there is no case on point. See generally Starr v. Baca, 652 F.3d 1202, 1206 (9th Cir. 2011) ("Although 'more limited in some respects,' a Bivens action is the federal analog to an action against state or local officials under [Section] 1983.") (quoting Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006)), cert. denied, 566 U.S. 982 (2012); see also Van Strum v. Lawn, 940 F. 2d 406, 409 (9th Cir. 1991) (noting section 1983 and Bivens action are identical save for replacement of a state actor under section 1983 with federal actor under Bivens).

10

Tucker v. Stewart, 72 F. App'x 597, 598 (9th Cir. 2003) (denying plaintiff's claims for failing to satisfy Rule 8 where he failed to allege these elements as instruct[ed] by the district court).

## B. THE FAC FAILS TO STATE AN EIGHTH AMENDMENT DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS CLAIM

### 1. Applicable Law

Prison officials or private physicians under contract to treat prisoners "violate the Eighth Amendment if they are 'deliberately indifferent to a prisoner's serious medical needs.'" Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976) (alterations omitted)); see also Farmer v. Brennan, 511 U.S. 825, 828 (1994).

The test for a deliberate indifference to serious medical needs claim is two-pronged, a prisoner plaintiff must allege facts demonstrating the defendant: (1) deprived him of an objectively serious medical need, and (2) acted with a subjectively culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297 (1991).

"A medical need is serious if failure to treat it will result in 'significant injury or the unnecessary and wanton infliction of pain.'" Peralta, 744 F.3d at 1081 (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A prison official is deliberately indifferent to [a serious medical] need if he 'knows of and disregards an excessive risk to inmate health.'" Id. at 1082 (quoting Farmer, 511 U.S. at 837). The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Deliberate indifference "requires more than ordinary lack of due care." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting Farmer, 511 U.S. at 835). "Deliberate indifference 'may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which

1 prison physicians provide medical care.'" Id. (quoting Hutchinson v. United States,
2 838 F.2d 390, 394 (9th Cir. 1988)).  In either case, however, the indifference to the
3 inmate's medical needs must be substantial – negligence, inadvertence, or differences
4 in medical judgment or opinion do not rise to the level of a constitutional violation.
5 Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) (negligence constituting
6 medical malpractice is not sufficient to establish an Eighth Amendment violation).

**2.     Analysis**

8 Here, to the extent Plaintiff's claim is based on the alleged denial of "medical
9 attention" after the excessive force incident, Plaintiff fails to demonstrate an Eighth
10 Amendment violation because he offers no facts showing that he needed medical care
11 or that any defendant was deliberately indifferent to that need.  See Farmer, 511 U.S.
12 at 837.  Plaintiff fails to meet either prong of the deliberate indifference test.
13 Specifically, Plaintiff omits any description of what objectively serious medical need
14 he was deprived of, merely alleging that after the alleged excessive force incident he
15 was placed in the SHU for three weeks because of the bruises and swelling and or
16 injuries caused by the Defendant(s) and denied medical attention.  Dkt. 10 at 11; see
17 also Wilson, 501 U.S. at 297.  Plaintiff states that an unknown prison staff member
18 took video and/or picture footage of his injuries, but he does not describe what those
19 injuries were nor does he provide details about how, why, or when his injuries were
20 documented.  Id.  He also does not provide any specific information about what
21 specific medical attention/needs he required but did not receive.  See id.  As a result,
22 Plaintiff sets forth purely conclusory allegations without providing any specific facts
23 to support his conclusions.

24 Plaintiff also fails to meet the subjective prong of the deliberate indifference
25 test because he does not identify any individual defendant acting with a subjectively
26 culpable state of mind.  Plaintiff references a single incident with an unknown prison
27 staff member photographing and/or videotaping his injuries.  Id.  This alone is not
28 sufficient to show that this unknown prison staff member, or any other defendant,

was either aware of a substantial risk of serious harm to Plaintiff or could draw an inference of said risk, and importantly, the unknown prison staff member is not named as a defendant. See id. at 3-6, 11; see also Farmer, 511 U.S. at 837-38 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment.")

The FAC, in its current state, fails to allege facts establishing that any defendant was aware of Plaintiff's serious medical need, and therefore fails to state a valid claim for deliberate indifference to a serious medical need under the Eighth Amendment. See Peralta, 744 F.3d at 1081.

## C. THE FAC FAILS TO STATE AN EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM

### 1. Applicable Law

The Eighth Amendment prohibits the use of excessive physical force against prisoners. Farmer, 511 U.S. at 832. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[8] Hudson v. McMillan, 503 U.S. 1, 6–7 (1992); Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citations omitted); Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).

---

[8] "Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." LeMaire v. Maass, 12 F.3d 1444, 1453 (9th Cir. 1993) (citing Whitley v. Albers, 475 U.S. 312, 320-22 (1978)).

1  "After incarceration, only the unnecessary and wanton infliction of pain . . .
2  constitutes cruel and unusual punishment forbidden by the Eighth Amendment."
3  Whitley v. Albers, 475 U.S. 312, 319 (1986) (citation and internal quotation marks
4  omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002).  "The alleged pain may be physical
5  or psychological."  Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

6      "[C]ourts considering a prisoner's claim must ask: 1) if the officials acted with a
7  sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively
8  harmful enough to establish a constitutional violation."  Somers v. Thurman, 109 F.3d
9  614, 622 (9th Cir.) (citing Hudson, 503 U.S. at 8), cert. denied, 522 U.S. 852 (1997).
10 Not every malevolent touch by a prison guard gives rise to a federal cause of action.
11 Hudson v. McMillian, 503 U.S. at 9.  De minimis uses of physical force do not rise to
12 the level of constitutional violations.  Id. at 9–10 ("Eighth Amendment's prohibition
13 of cruel and unusual punishments necessarily excludes from constitutional recognition
14 de minimis uses of physical force, provided that the use of force is not of a sort
15 repugnant to the conscience of mankind.") (citations and internal quotations omitted).

16     Factors that may be considered in determining whether the use of force was
17 wanton and unnecessary include:  (1) the extent of injury the inmate suffered; (2) the
18 need for application of force; (3) the relationship between that need and the amount
19 of force used; (4) the threat reasonably perceived by the responsible officials; and (5)
20 any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7;
21 Whitley, 475 U.S. at 321; Furnace v. Sullivan, 705 F.3d 1021, 1028–29 (9th Cir. 2013).

22     **2.    Analysis**

23     Here, the FAC fails to state a claim for relief because it does not provide facts
24 showing that any defendant's actions rose to the level of excessive force in violation
25 of the Eighth Amendment.  Specifically, Plaintiff does not explain the extent of any
26 injuries he suffered; why any defendant was compelled to use force; the threat
27 defendant(s) reasonably perceived Plaintiff posed; and whether Plaintiff took any
28 steps to temper the use of force.  See Dkt. 10 at 7–12.  Instead, Plaintiff describes a

series of actions the defendant(s) took, including restraining Plaintiff, to collect a DNA sample. Id. at 7–10. Without such facts, among others, he fails to demonstrate that the force used against him was not merely "de minimis" and was done "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7.

Moreover, as for Plaintiff's allegations of verbal harassment and insults, such conduct does not violate the Eighth Amendment. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), as amended, 135 F.3d 1318 (9th Cir. 1998); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) ("[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983"(internal citation omitted)) (overruled on other grounds by Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008)) (footnote omitted).

Finally, to the extent Plaintiff's claim may be based on a compelled DNA extraction, Plaintiff is a prisoner serving a criminal sentence and thus had no constitutional right against the taking of a DNA sample.[9] See Hamilton v. Brown, 630 F.3d 889, 895 (9th Cir. 2011) ("Having been convicted and incarcerated, Hamilton has no legitimate expectation of privacy in the identifying information derived from his DNA."); see also id. at 897 (Eighth Amendment not violated by use of reasonable force to extract a DNA blood sample from inmate); United States v. Reynard, 473 F.3d 1008, 1021 (9th Cir.) (compelled extraction of blood for DNA collection does not violate a prisoner's Fifth Amendment right against self-incrimination), cert. denied, 552 U.S. 143 (2007). Nor has Plaintiff alleged that defendant(s), in subjecting him to mouth swab against his will, caused "the

---

[9] In December 2018, plaintiff was tried and convicted in the U.S. District Court for the Southern District of Iowa on a charge for conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. See United States v. Magallon, 984 F.3d 1263 (8th Cir. Jan. 8, 2021) (affirming district court judgment). On April 12, 2019, the district court sentenced him to 164 months' imprisonment. Id. at 1276.

15

1 unnecessary and wanton infliction of pain." Hamilton, 630 F.3d at 897 (quoting
2 Whitley, 475 U.S. at 319).

### V.
### LEAVE TO FILE A SECOND AMENDED COMPLAINT[10]

For the foregoing reasons, the First Amended Complaint is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is advised that the Court's determination herein that the allegations in the FAC are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in his Second Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

///
///
///
///

---

[10] The Court's Order herein constitutes non-dispositive rulings on pretrial matters. To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned district judge **within fourteen (14) days**. See Local Rule 72-2.1. To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive **within fourteen (14) days**. A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

Accordingly, **IT IS ORDERED THAT within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following three options:

**1.** Plaintiff may file a Second Amended Complaint ("SAC") to attempt to cure the deficiencies discussed above. **The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the Second Amended Complaint, which the Court encourages Plaintiff to use.**

Irrespective of Plaintiff's pro se status, if he wishes to proceed with this action, he must comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California ("L.R."). Briones v. Riviera Hotel & Casino, 116 F.3d 379, 382 (9th Cir. 1997) ("pro se litigants are not excused from following court rules"); L.R. 1-3 ("Persons appearing pro se are bound by these rules, and any reference in these rules to 'attorney' or 'counsel' applies to parties pro se unless the context requires otherwise."). For instance, Plaintiff's pleading must be numbered consecutively at the bottom of each page. See, e.g., L.R. 11-3.1.1, 11-3.2, 11-3.3.

Furthermore, if Plaintiff chooses to file a Second Amended Complaint, he must clearly designate on the face of the document that it is the "Second Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form. Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the original Complaint, the First Amended Complaint, or any other pleading, attachment, or document.

In addition, the SAC must be complete without reference to the original Complaint, the First Amended Complaint, or any other pleading, attachment, or document. Further, if Plaintiff feels that any document is integral to any of his claims, then he should attach such document as an exhibit at the end of the SAC and clearly

1 allege the relevance of each attached document to the applicable claim raised in the
2 SAC.

3       An amended complaint supersedes the preceding complaint. Ferdik v.
4 Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat
5 all preceding complaints as nonexistent. Id. **Because the Court grants Plaintiff**
6 **leave to amend as to all his claims raised here, any claim raised in a preceding**
7 **complaint is waived if it is not raised again in the Second Amended Complaint.**
8 Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012).

9       The Court advises Plaintiff that it generally will not be well-disposed toward
10 another dismissal with leave to amend if Plaintiff files a SAC that continues to include
11 claims on which relief cannot be granted. "[A] district court's discretion over
12 amendments is especially broad 'where the court has already given a plaintiff one or
13 more opportunities to amend his complaint.'" Ismail v. Cty. of Orange, 917 F. Supp.
14 2d 1060, 1066 (C.D. Cal. 2012); see also Ferdik, 963 F.2d at 1261. **Thus, if Plaintiff**
15 **files a Second Amended Complaint with claims on which relief cannot be**
16 **granted, the Second Amended Complaint may be dismissed without leave to**
17 **amend and with prejudice.**

19    **2.**   Alternatively, Plaintiff may voluntarily dismiss the action without
20 prejudice, pursuant to Federal Rule of Civil Procedure 41(a). **The Clerk of Court is**
21 **also directed to mail Plaintiff a blank Notice of Dismissal Form, which the**
22 **Court encourages Plaintiff to use if he chooses to voluntarily dismiss the**
23 **action.**

25    **3.**   Finally, Plaintiff may file a Notice of Intent to Stand on Complaint,
26 indicating Plaintiff's intent to stand on the original First Amended Complaint despite
27 the pleading defects set forth herein, which may result in the dismissal of this action in
28 its entirety based upon such defects.

**Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on Complaint may result in this action being dismissed with or without prejudice on the grounds set out above, for failure to state a claim, or for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

**IT IS SO ORDERED.**

Dated: May 04, 2021

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

SHON OLIVENTA WILLIAMS,

Plaintiff(s),

v.

L. BIRD,

Defendant(s).

CASE NUMBER

CV 21-3375-MWF (PLA)

**NOTICE OF DISMISSAL PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 41(a) or (c)**

PLEASE TAKE NOTICE: (*Check one*)

☐ This action is dismissed by the Plaintiff(s) in its entirety.

☐ The Counterclaim brought by Claimant(s) _____ is dismissed by Claimant(s) in its entirety.

☐ The Cross-Claim brought by Claimants(s) _____ is dismissed by the Claimant(s) in its entirety.

☐ The Third-party Claim brought by Claimant(s) _____ is dismissed by the Claimant(s) in its entirety.

☐ **ONLY** Defendant(s) _____

is/are dismissed from (*check one*) ☐ Complaint, ☐ Counterclaim, ☐ Cross-claim, ☐ Third-Party Claim brought by _____.

The dismissal is made pursuant to F.R.Civ.P. 41(a) or (c).

_____          _____
         *Date*                              *Signature of Attorney/Party*

*NOTE: **F.R.Civ.P. 41(a):** This notice may be filed at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.*

*  **F.R.Civ.P. 41(c):** Counterclaims, cross-claims & third-party claims may be dismissed before service of a responsive pleading or prior to the beginning of trial.*

CV-09 (03/10)          **NOTICE OF DISMISSAL PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 41(a) or (c)**